IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDALL DUCHESNEAU, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 08-4856 |
| | : | |
| v. | : | |
| | : | |
| CORNELL UNIVERSITY, et al. | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM AND ORDER**

**Jones, J.**                                                                                                    **February 26, 2009**

This matter arises out of a tragic accident which occurred on October 12, 2006, on the campus of Cornell University ("Cornell") in Ithaca, New York. Now under consideration is (1) Defendant Cornell's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and (3), or, in the Alternative, Transfer This Action to the U.S. District Court for the Northern District of New York (Docket No. 5) and (2) Defendant TumbleTrak's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3) (Docket No. 4). For the following reasons, the motions will be granted.

**I.     Facts and Procedural Posture**

On October 12, 2006, at approximately 11:00 p.m., Plaintiff Randall Duchesneau ("Plaintiff"), a twenty-one year old Pennsylvania resident, was utilizing a TumblTrak gymnastic tumbling training apparatus located in the Teagle Gymnasium on the campus of Cornell. After Plaintiff attempted a backwards jumping gymnastic maneuver on the TumblTrak, he landed squarely in the center of the apparatus, causing him to suffer catastrophic, permanent spinal injuries, which have rendered him a quadriplegic who is totally dependant on a motorized, reclined wheelchair.

On or about October 10, 2009, Plaintiff initiated this lawsuit in the United States District Court for the Eastern District of Pennsylvania, alleging negligence and products liability. Plaintiff alleged diversity of citizenship between the parties. Defendant Cornell has filed a Motion to Dismiss in which it asserts that this Court lacks personal jurisdiction over Cornell or, in the alternative, that venue is improper in this District. Defendant TumblTrak has filed a Motion to Dismiss in which it only asserts that venue is improper in this District. Plaintiff has opposed both motions on the grounds that the Court has personal jurisdiction over both Defendants and that venue is proper in this District.

**II.   Legal Standard**

Federal Rule of Civil Procedure 4(e) allows a district court to assert personal jurisdiction over a non-resident to the extent allowed by the law of the state in which it sits. See Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984). Pennsylvania's long-arm statute provides that a court may exercise personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States." 42 Pa. C. S.A. § 5322(b).

Due process requires that the defendant have "minimum contacts" with the forum state, and that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "Minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Remick, 238 F.3d at 255 (quoting Asahi Metal Indus. Co., Ltd. v. Superior Court of California, 480 U.S. 102, 109 (1987). When determining whether personal jurisdiction exists, the court must resolve the

question based on the circumstances that the particular case presents. Burger King v. Rudziewicz, 471 U.S. 462, 485 (1985).

A court may exercise personal jurisdiction based on a defendant's general or specific contacts with the forum. General jurisdiction is based upon the defendant's "continuous and systematic contacts" with the forum. General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-416, (1984)). Specific jurisdiction is appropriate only if the "plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant 'should reasonably expect being haled into court' in that forum." Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co., 75 F.3d 147, 151 (3d Cir. 1996) (quoting Worldwide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). Specific jurisdiction is established where the defendant "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate[ ] to' those activities." BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp., 229 F.3d 254, 259 (3d Cir. 2000) (quoting Burger King, 471 U.S. at 472).

To find that a plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum state, the Third Circuit requires "a closer and more direct causal connection than that provided by the but-for test." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 323 (3d Cir. 2007). However, the required causal connection is looser than the tort concept of proximate causation. Id. (citing Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 99-100 (3d. Cir. 2004)). The appropriate analysis is fact-intensive, focusing on the "reciprocity principle upon which specific jurisdiction rests" – whether the defendant received the benefits and protections of a state's laws to the extent that it should, as a *quid pro quo*, submit to the burden of litigation in the

state. O'Connor, 496 F.3d at 323.

In deciding a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint are taken as true. However, once a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits, or competent evidence, sufficient contacts with the forum state to establish personal jurisdiction. See Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996), cert. denied, 519 U.S. 1028 (1996)). The plaintiff must establish those contacts with reasonable particularity. See Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1996). Once the plaintiff makes out a prima facie case in favor of personal jurisdiction, the burden shifts to the defendant to establish that the presence of some other considerations would render jurisdiction unreasonable. See Carteret Sav. Bank v. Shushan, 954 F.2d 141, 150 (3d Cir. 1992).

Under Federal Rule of Civil Procedure 4(k), a District Court typically exercises personal jurisdiction according to the law of the state where it sits. See Fed. R. Civ. P. 4(k)(1)(A). Because this case was filed in the United States District Court for the Eastern District of Pennsylvania, the Court applies the Pennsylvania long-arm statute. It provides for jurisdiction "based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S.A. § 5322(b); see Mellon Bank (East) PSFS, 960 F.2d at 1221. Accordingly, in determining whether personal jurisdiction exists, we ask whether, under the Due Process Clause, the defendant has "certain minimum contacts with ... [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." See Int'l Shoe Co., 326 U.S. at 316 (internal quotation omitted).

**III.     Discussion**

   **A.     Cornell University**

       **1.     Personal Jurisdiction**

Jurisdiction over a nonresident defendant may be based either upon the specific acts of the defendant which gave rise to the cause of action (specific jurisdiction), or upon the defendant's general activity within the forum state (general jurisdiction).  See Burger King, 471 U.S. at 473 & n. 15.  These categories constitute "two distinct theories," and Pennsylvania caselaw recognizes the importance of separate analyses.  O'Connor, 496 F.3d at 321 (citing Remick, 238 F.3d at 255; Grimes, 17 F.3d at 1559).

Under this rubric, we turn to Pennsylvania law, which, as described above, reaches to the full extent of the United States Constitution.  In order for a Pennsylvania court to assert specific jurisdiction, the cause of action must arise out of the defendant's activities within the Commonwealth.  See 42 Pa. C.S.A. § 5322; Skinner v. Flymo, 351 Pa. Super. 234, 239 (1986).  General jurisdiction, on the other hand, exists regardless of whether the cause of action is related to the defendant's activities in Pennsylvania, as long as the defendant's activities in this Commonwealth are "continuous and substantial."  See Skinner, 351 Pa. Super. at 239-40 (citing Bork v. Mills, 458 Pa. 228, 231-232 (1974); Slota v. Moorings, Ltd., 343 Pa. Super. 96, 104-07, (1985)).  Regardless of which test is used to impose jurisdiction over a non-resident, the result must satisfy the due process requirements of the United States Constitution – *i.e.*, that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.  Id.; Int'l Shoe, 326 U.S. at 316.

### a.     Specific Jurisdiction

The inquiry as to whether specific jurisdiction exists has three parts. First, the defendant must have purposefully directed its activities toward the Commonwealth of Pennsylvania. O'Connor, 496 F.3d at 317; Burger King Corp., 471 U.S. at 472.  Second, the litigation must arise out of or relate to at least one of those activities.  O'Connor, 496 F.3d at 317 (citing Grimes v. Vitalink Commc'ns Corp., 17 F.3d 1553, 1559 (3d Cir. 1994)); Helicopteros, 466 U.S. at 414. Third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.' "  O'Connor, 496 F.3d at 317; Burger King, 471 U.S. at 476 (quoting Int'l Shoe, 326 U.S. at 320).

In Pennsylvania, this specific jurisdiction long-arm statute is codified at 42 Pa. C.S.A. § 5322.  Plaintiff asserts that Cornell has satisfied the requirements for the exercise of specific jurisdiction because Cornell meets one of the specific categories of contacts listed under § 5322 – namely, either subsection (a)(1)(v) or (a)(5) concerning the ownership, use, or possession of any real property located within the Commonwealth.  To wit, Plaintiff refers to Cornell's "Middle Atlantic Regional Office," which operates out of an office suite in Eagle, Chester County, Pennsylvania.  This office is charged with "serv[ing] as the regionally based representative to the Cornell Clubs and Alumni Associations," as well as "generally represent[ing] Cornell University to the alumni, parents, students and friends of Cornell throughout the Middle Atlantic Region."[1] See http://www.alumni.cornell.edu/regional/ma/index.cfm.[2]

---

[1] The Cornell website includes "Eastern Pennsylvania" as part of the Middle Atlantic region.  See http://www.alumni.cornell.edu/regional/ma/index.cfm.

[2] Plaintiff appears to confuse specific and general jurisdiction in its briefing.  Plaintiff relies upon § 5322, but does not engage in a specific jurisdiction analysis.

Even assuming, *arguendo*, that Plaintiff could satisfy the first (action directed toward Pennsylvania) and third (fair play and substantial justice) prongs of the specific jurisdiction test based on this minimum contact,[3] the second prong (relationship to the cause of action) proves fatal to Plaintiff's argument. As stated, it is a fundamental principal of specific jurisdiction jurisprudence that that the cause of action *arise from* the non-resident's activities within Pennsylvania. The animating principle behind this relatedness requirement is the notion of a tacit *quid pro quo* that makes litigation in the forum reasonably foreseeable. That is, out-of-state residents who exercise the privilege of conducting activities within a state enjoy the benefits and protection of the state's laws; in exchange, they must submit to jurisdiction over claims that arise from or relate to those activities. O'Connor, 496 F.3d at 322 (citing Int'l Shoe, 326 U.S. at 319; Burger King, 471 U.S. at 475-76). The relatedness requirement's function is to maintain balance in this reciprocal exchange and limit jurisdictional exposure to situations where a cause of action is closely tailored to a contact's accompanying substantive obligations. O'Connor, 496 F.3d at 322-23. While this does not mean that the defendant's activities have to be the proximate cause of the injury from which the cause of action arises, O'Connor, 496 F.3d at 320 (citing Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93 (3d Cir. 2004)), "the connection must nonetheless be intimate enough to keep the *quid pro quo* proportional and personal jurisdiction reasonably foreseeable." O'Connor, 496 F.3d at 323.

Applying these principles here, the Court finds that there is no relationship between Cornell's specific activities in the Commonwealth and Plaintiff's cause of action. The activities

---

[3] The Court has a serious doubt as to whether Plaintiffs could prevail on the third element as well. However, the Court need not reach that questions here, as the second prong is determinative.

undertaken by Cornell's Chester County alumni office are limited to student recruiting and alumni organization in the Middle Atlantic region.[4]  The causes of action against Cornell in this matter concern a personal injury suffered in a gymnasium on the Cornell campus in upstate New York.  Thus, Plaintiff's claims simply do not "arise from or relate to" Cornell's activities in its Middle Atlantic alumni office.  To allow specific jurisdiction based on such unconnected elements would unacceptably tip the reciprocal exchange in Plaintiff's favor.  Stated differently, the connection is not intimate enough to keep the *quid pro quo* proportional.  Under these circumstances, the Court must decline to exercise specific jurisdiction over Cornell.

> b. **General Jurisdiction**[5]

If specific jurisdiction does not exist, Pennsylvania courts may still exercise general personal jurisdiction over non-resident defendants.  In contrast to traditional specific jurisdiction analysis, general personal jurisdiction is based upon the defendant's general activity within the forum state.  Skinner, 351 Pa. Super. at 239.  Authority to exercise general jurisdiction over non-resident defendants is conferred upon Pennsylvania courts by 42 Pa. C.S.A. § 5301, which provides, in relevant part:

---

[4] Cornell has no other specific presence in the Commonwealth (*e.g.*, educational facilities, bank accounts, incorporation, registered agent, or business license).

[5] Plaintiff has not responded to Cornell's contention that there is a lack of general jurisdiction here, focusing instead on specific jurisdiction under § 5322.  However, as noted above, it is unclear whether Plaintiff did so deliberately or was confusing the principles of specific and general jurisdiction.  Therefore, for the purposes of completeness, the Court will analyze Cornell's argument regarding general jurisdiction.

> The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person, or his personal representative in the case of an individual, and to enable such tribunals to render personal orders against such person or representative:
> ...
>     (2) Corporations.
> ...
>     (iii) The carrying on of a continuous or systematic part of its general business within this Commonwealth.

Id. General jurisdiction exists regardless of whether the cause of action is related to the defendant's activities in Pennsylvania, as long as the defendant's activities are "continuous and substantial." Bork, 458 Pa. at 231-232; Skinner, 351 Pa. Super. at 239. Thus, in order for Cornell to be subject to the personal jurisdiction of this Court, Plaintiff must first establish that Cornell's contacts with Pennsylvania are "continuous and systematic business contacts." Helicopteros, 466 U.S. at 416. When evaluating contacts with a forum, a court should look to a party's "purposeful and extensive availment" of the forum. Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir.1987). If such contacts exists, the Court must also ensure that the exercise of general jurisdiction comports with due process guaranteed by the United States Constitution by finding that those basing jurisdiction on those contacts comports with traditional notions of fair play and substantial justice. Asahi, 480 U.S. at 113 (citing Int'l Shoe, 326 U.S. at 316).

    According to its motion, Cornell is a not-for-profit corporation organized and existing pursuant to the laws of the state of New York with its principal place of business located in

Ithaca, New York. Cornell is not incorporated or formed under the laws of Pennsylvania and is not qualified as a foreign corporation or entity under the laws of Pennsylvania. Cornell has no agent for service of process in Pennsylvania. Cornell has not had and does not have a bank account in Pennsylvania. Cornell is not incorporated, registered, authorized or licensed to do business in Pennsylvania. Cornell has not consented to and does not consent to being sued in the state or federal courts of Pennsylvania. Indeed, Cornell conducts no business in Pennsylvania, other than student recruiting and alumni activities[6] and participation by its teams in occasional athletic events in Pennsylvania.

Courts have repeatedly declined to exercise general jurisdiction over foreign institutions of higher learning in situations where the relevant contacts were more compelling than the instant case. In Gehling v. St. George School of Medicine, Ltd., 773 F.2d 539 (3d Cir. 1985), the U.S. Court of Appeals for the Third Circuit affirmed dismissal of a wrongful death action based on lack of general jurisdiction where the following contacts existed:

> • Solicitation of Pennsylvania students through placement of advertisements in the New York Times and Wall Street Journal;
> • Six percent of students were from Pennsylvania;
> • Pennsylvania residents annually paid several hundred thousand dollars in tuition;
> • Agents of the school undertook a "media swing" in 1980 touring nine cities in the U.S. including Philadelphia. While in Philadelphia, the school agents appeared on radio and television attempting to gain exposure and establish credibility for the medical school;
> and
> • Joint international "feeder" program between the Grenada medical school and Pennsylvania's Waynesburg College under which international students would take two years of pre-medicine

---

[6] Even these are directed at a large region of which Eastern Pennsylvania is only a small part.

related classes at Waynesburg College and, upon achievement of specified MCAT score, would matriculate to the medical school in Grenada.

In so holding, the Gehling Court specifically highlighted the fact that the defendant was "an educational institution that provides no *educational services* in Pennsylvania." Id. at 543 (emphasis added).

In another wrongful death claim, this time filed by a Pennsylvania resident against Columbia University for events that transpired in New York, the Honorable Marvin Katz of this Court dismissed the case for lack of general jurisdiction where the following contacts existed:

> • A student body that includes Pennsylvania residents whose tuition generates income for the school;
> • Collection actions filed by Columbia in the Commonwealth's Common Pleas Court;
> • At least four trust accounts overseen by First Union National Bank in Philadelphia;
> • Participation by Columbia professors and other employees in conferences, visiting professorships, and other academic activities in Pennsylvania;
> • Participation in revenue-generating athletic events in this state; and
> • Research contracts or agreements to conduct clinical trials between the defendant and at least six pharmaceutical companies conducting business in Philadelphia.

Gallant v. Trustees of Columbia Univ., 111 F. Supp. 2d 638 (E.D. Pa. 2000). In so holding, Judge Katz noted that the activities were "the result of Columbia's general participation in the type of interstate activity in which any nationally prominent educational institution would engage," and found that the plaintiff had "not produced any evidence that suggests that Columbia or its employees singled out Pennsylvania as opposed to generally participating in interstate academic activities that may take place in the Commonwealth." Id. at 641-42.

In <u>Kendall v. Trustees of Amherst College</u>, 2007 WL 172396, (E.D. Pa. Jan. 18, 2007), the Honorable John R. Padova of this Court granted a motion to transfer an action, which involved an injury on the Amherst campus in Massachusetts, to the Western District of Massachusetts based on a lack of personal jurisdiction in the Eastern District of Pennsylvania. In that case, the alleged contacts were:

> • Defendant utilized banks and financial depositories within Pennsylvania for the purpose of collecting payments for tuition and room and board for current students;
> • Defendant designated "class agents" in Pennsylvania to coordinate alumni affairs of Amherst graduates;
> • Defendant solicited monetary gifts from alumni in Pennsylvania; and
> • Defendant sent employees to physically visit Pennsylvania High Schools and conduct other efforts to recruit students at Pennsylvania secondary schools.

<u>Id</u>. at *16-17. Judge Padova followed <u>Gehling</u> and <u>Gallant</u> and found these contacts to be no more continuous or substantial than those of Columbia University or St. George's. <u>Id</u>. Finally, in <u>Corrales Martin v. Clemson University</u>, 2007 WL 4531028 (E.D. Pa., Dec. 20, 2007), a race discrimination action brought against a South Carolina university in the Eastern District of Pennsylvania, the Honorable Michael M. Baylson of this Court granted defendant's motion to dismiss for lack of personal jurisdiction. In <u>Corrales Martin</u>, the relevant contacts were that Clemson:

>   • Recruited students at college fairs in Pennsylvania;
>   • Enrolled Pennsylvania students;
>   • Coaches targeted and recruited Pennsylvania high school athletes;
>   • Faculty students, staff and administrators regularly participated in events in Pennsylvania;
>   • Solicited and received donations from Pennsylvania residents;
>   • Licensed its trademarks to Pennsylvania residents;
>   • Purchased services and goods from Pennsylvania;
>   • Regularly contracted with Pennsylvania entities;
>   • Subcontracted to provide services to Pennsylvania entities; and
>   • Faculty members consulted in Pennsylvania.

Id. at *6.  Judge Baylson followed Gehling, Gallant, and Kendall.  Id. at *6 & n. 4.

The Court finds that, based on the specific facts of this case and the relevant precedent described herein, Cornell lacks "continuous and systematic business contacts" with Pennsylvania so as to justify the exercise of general jurisdiction.  The contacts upon which Plaintiff may rely to support the exercise of general jurisdiction are those in which any nationally prominent university would engage.  Finding general jurisdiction here would render any similar institution subject to general jurisdiction in most, if not all states.  Gallant, 111 F. Supp.2d at 643.  Moreover, the contacts here are no greater than in Gehling, Gallant, Kendall and Corrales Martin – indeed, they are less.  Because there is nothing to indicate that Cornell has purposefully directed its activities to this forum such that it would reasonably anticipated being haled into court here, the exercise of general jurisdiction is not appropriate.

  **2. Venue**

28 U.S.C. §1391, titled "Venue generally" provides in relevant part as follows:

> "(a) A civil action where jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.
> ...
> (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced..."

None of these provisions is satisfied here. For purposes of subsection (a)(2), no events or omissions giving rise to Plaintiff's claims occurred in Pennsylvania. The accident itself, and all possible relevant relationships between the parties, occurred in Ithaca, New York, which is located in the Northern District of New York. Subsection (a)(3) is similarly inapplicable, as it specifically applies only "if there is no other district in which the action may otherwise be brought." Here, this action could have been brought in the United States District Court for the Northern District of New York, where Ithaca and Cornell, and accordingly the location of the accident, are located.

The only remaining subsection under which plaintiff could possibly satisfy venue is subsection (a)(1). Under this subsection, venue would be appropriate in the Eastern District of Pennsylvania only if all defendants are determined to "reside" within Pennsylvania. In this regard, Plaintiff's complaint specifically alleges that Cornell does not maintain a regular place of business in the Commonwealth of Pennsylvania. Complaint ¶ 2. Cornell University is a not-for-profit corporation. Under §1391(c), Cornell is deemed to reside in any judicial district in which it

14

is subject to personal jurisdiction at the time the action is commenced. As discussed above, Cornell is not subject to the personal jurisdiction of this court, and is therefore not deemed to "reside" within this district. Accordingly, §1391(a)(1) does not apply. In sum, venue in this district is improper for Defendant Cornell. Venue would, however, be proper for Cornell in the Northern District of New York under §1391(a)(2) because the events or omissions giving rise to Plaintiff's claims occurred in that district.

      **B.**      **Tumbletrak**

TumblTrak moves for dismissal solely due to improper venue pursuant to Fed. R. Civ. P. 12(b)(3). By doing so, TumblTrak has waived any challenge to personal jurisdiction. See Fed. R. Civ. P. 12(g)(2); 12(h)(1) (specifying that a defendant seeking to challenge personal jurisdiction must consolidate its challenge with a challenge to venue). The Court has explained §1391 *supra*. As with Defendant Cornell, subsections (2) and (3) do not apply to TumblTrak. Thus, the only remaining subsection under which Plaintiff could possibly satisfy venue is subsection (1). Under this subsection, venue would be appropriate here only if *all* defendants are determined to "reside" within Pennsylvania. It is true that under §1391(c), Tumbltrak is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. However, as discussed above, defendant Cornell is not subject to the personal jurisdiction of this court, and accordingly is not deemed to "reside" within Pennsylvania. Therefore, *all* of the defendants do not "reside" in Pennsylvania for the purposes of §1391(a)(1), and Plaintiff cannot rely upon that subsection. Venue in this district is therefore improper for Defendant TumblTrak. However, under §1391, venue would be proper in the Northern District of New York.

### C.     Transfer

Although the Court lacks personal jurisdiction over Defendant Cornell, the Court concludes that transferring this action to the United States District Court for the Northern District of New York would better serve the interests of justice than dismissal of the action. See 28 U.S.C. § 1631 ("Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed..."); Kendall, 2007 WL 172396, at * 6.  As discussed above, personal jurisdiction and venue are proper in the Northern District of New York as Cornell's place of business is located there and Plaintiff's injuries occurred there.  See 28 U.S.C. § 1391(a), (c). Moreover, a transfer is in the interest of justice because it will prevent the duplication of filing costs.  See Kendall, 2007 WL 172396, at * 6 (citing Lawman Armor Corp. v. Simon, 319 F.Supp.2d 499, 507 (E.D.Pa.2004) ("Normally transfer will be in the interest of justice because dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating.") (quoting In re Ski Train Fire in Kaprun, Austria on November 11, 2000, 257 F.Supp.2d 717, 734 (S.D.N.Y.2003))).

### IV.     Conclusion

This Court lacks personal jurisdiction over Defendant Cornell, and venue is therefore improper for Defendants Cornell and Tumbltrak.  The Court will grant both motions, but, rather than dismiss, will transfer this action to the Northern District of New York in the interests of justice.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDALL DUCHESNEAU, | : | CIVIL ACTION |
| Plaintiff, | : | NO. 08-4856 |
| v. | : | |
| CORNELL UNIVERSITY, et al. | : | |
| Defendants. | : | |

**ORDER**

AND NOW, this 26th day of February, 2009 it is ORDERED that:

1. Defendant Cornell University's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and (3), or, in the Alternative, Transfer This Action to the U.S. District Court for the Northern District of New York (Docket No. 5) is GRANTED;

2. Defendant Tumbletrak's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3) (Docket No. 4) is GRANTED as modified by this Memorandum and Order;

3. The Clerk of Court is directed to transfer this action to the United States District Court for the Northern District of New York and thereafter mark this case closed for statistical purposes in this District.

BY THE COURT:

/s/ C. Darnell Jones II

_____

C. DARNELL JONES II,    J.