IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDALL DUCHESNEAU, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 08-4856 |
| | : | |
| v. | : | |
| | : | |
| CORNELL UNIVERSITY and TUMBLTRAK, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

**Jones II, J.**                                                                                                 **September 30, 2009**

This matter arises out of a tragic accident which occurred on October 12, 2006, on the campus of Cornell University ("Cornell") in Ithaca, New York. Now under reconsideration are: (1) Cornell's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and (3), or, in the Alternative, Transfer This Action to the U.S. District Court for the Northern District of New York (Docket No. 5); and (2) Tumbltrak's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3) (Docket No. 4). These Motions will be denied.

### I.   Facts and Procedural Posture

On October 12, 2006, Plaintiff Randall Duchesneau ("Plaintiff"), a twenty-one year old, was utilizing a Tumbltrak gymnastic tumbling training apparatus located in the Teagle Gymnasium on the campus of Cornell. Plaintiff attempted a backwards jumping gymnastic maneuver on the Tumbltrak, and landed squarely in the center of the apparatus – causing him to suffer catastrophic, permanent spinal injuries. Those injuries have rendered Plaintiff a quadriplegic; he is totally dependant on a motorized, reclined wheelchair.

On October 10, 2008, Plaintiff initiated this lawsuit in the United States District Court for

the Eastern District of Pennsylvania, alleging negligence and product liability. Plaintiff alleged diversity of citizenship between the parties. Cornell filed a Motion to Dismiss in which it asserts that this Court lacks personal jurisdiction over Cornell or, in the alternative, that venue is improper in this District. Tumbltrak filed a Motion to Dismiss in which it only asserts that venue is improper in this District. Plaintiff opposed both motions on the grounds that the Court has personal jurisdiction over both Defendants and that venue is proper in this District.

On February 26, 2009, the Court issued an Order transferring this matter to the Northern District of New York. Thereafter, Plaintiff filed a Motion for Reconsideration, seeking leave to conduct jurisdictional discovery. On March 11, 2009, the Court vacated its February 26, 2009, Order to allow the requested jurisdictional discovery.[1] Subsequently, the Court ordered both Plaintiff and Cornell to file supplemental memoranda on personal jurisdiction, and they did so. The Court offered Plaintiff an opportunity to respond to Cornell's Memorandum, but Plaintiff declined to do so.[2]

Given the results of jurisdictional discovery, however, the Court is compelled to note its concern about the content and phrasing of Cornell Treasurer Patricia Johnson's original Affidavit and her apparent lack of (a) involvement with its preparation, and (b) understanding of the content therein. That Affidavit contributed directly to the original Order of the Court, and the record now reveals that some of the representations made therein were poorly researched/prepared and were subsequently contradicted by deposition testimony and written

---

[1] See Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003) (noting that jurisdictional discovery should be allowed unless the plaintiff's claim is clearly frivolous).

[2] Plaintiff requested oral argument on the question of personal jurisdiction, however the Court does not feel it is necessary for the resolution of the pending motion.

discovery.[3]  The Court expects more care in any future sworn statements.

## II.     Personal Jurisdiction

When ruling on a motion to dismiss for lack of personal jurisdiction, the Court must accept the allegations in the complaint as true. See Dayhoff, Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir.), cert. denied, 519 U.S. 1028 (1996).  Once a defendant challenges jurisdiction, the burden shifts to the plaintiff to establish with competent evidence that the court may exercise jurisdiction.  Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992); Carteret Savings Bank v. Shushan, 954 F.2d 141, 146 (3d Cir.), cert. denied, 506 U.S. 817 (1992); Dayhoff, Inc., 86 F.3d at 1302 (citing North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir.), cert. denied, 498 U.S. 847 (1990)).  Once a motion is made, the "plaintiff must respond with actual proofs (by affidavits or otherwise), not mere allegations." Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66-7 n.9 (3d Cir. 1984).

---

[3] For example, it is no excuse to now state that at the time her Affidavit was written, Ms. Johnson, a senior representative of Cornell, had no idea that Cornell has been registered to do business in Pennsylvania since 1952.  Cornell is a sophisticated corporate institution that presumably keeps records in a responsible manner, and it should be aware of where it is licensed to operate.  Beyond that, however, if Ms. Johnson could agree to the fact of Pennsylvania corporate registration during her jurisdictional discovery deposition, that fact could have, and should have, been ascertained before drafting the sworn Affidavit to the contrary and asking the Court to rely upon it in deciding a significant motion.  Cornell cannot credibly maintain that Plaintiff could identify the registration, but that, when drafting an Affidavit directly on point, Cornell could not.  Moreover, Cornell fails to explain why it (through Ms. Johnson or Associate University Counsel Valerie Cross Dorn) did not simply inquire of the Pennsylvania Secretary of State as to whether Cornell was registered in Pennsylvania before Ms. Johnson's Affidavit was filed.  Ms. Johnson's Affidavit was prepared by Cornell's University Counsel Office (after a "back and forth"); Cornell's attorneys were on notice as to the importance of the veracity of the statements made therein.

In addition, the Court finds the fact that Cornell is now – when faced with this lawsuit – taking steps to vitiate its Pennsylvania corporate registration to be irrelevant.

Neither party is asserting that this Court has specific personal jurisdiction over Defendant Cornell.  Rather, the parties dispute general personal jurisdiction**.**  The Hon. Lawrence Stengel aptly summarized the appropriate standard for evaluating general personal jurisdiction in Ferro v. Atlantic City Showboat, Inc., Civil Action No. 07-1016, 2007 U.S. Dist. LEXIS 88954 (E.D. Pa. Dec. 3, 2007):

> "The starting point for the inquiry into whether this court has general jurisdiction over a non-resident defendant is Rule 4(e) of the Federal Rules of Civil Procedure, which [a]uthorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." Mellon Bank, 960 F.2d at 1221 (citing Mesalic v. Fiberfloat Corp., 897 F.2d 696, 698 (3d Cir. 1990)).  Thus, the jurisdiction of this court reaches as far as Pennsylvania's long arm statute, which states that "[t]he jurisdiction of the tribunals of this Commonwealth shall extend to all persons . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.  42 PA. CONS. STAT. ANN. § 5322(b).  The reach of this section is coextensive with the due process clause of the 14th Amendment.  See North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 690 (3d Cir. 1990) (citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984)).
>
> Under Pennsylvania's long-arm statute, general personal jurisdiction is exercised over a defendant based on that defendant's "continuous and systematic" contacts with this state.  Remick v. Manfredy, et al., 238 F.3d 248, 255 (3d Cir. 2001). It exists "even if the plaintiff's cause of action arises from the defendant's non-forum related activities."  Id. (quoting Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co., 75 F.3d 147, 151 (3d Cir. 1996)).  The forum-state contacts must be such that the defendant can reasonably anticipate being haled into court there. World-Wide Volkswagen, 444 U.S. at 297.  Once it is established that the defendant's contacts with the forum are continuous and systematic, a court must be sure that maintenance of the suit does not offend traditional notions of fair play and substantial justice.  International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L.

> Ed. 95, (1945).
>
> The Third Circuit has held that in order to properly exercise general personal jurisdiction over a defendant, the required contacts must be significantly more than mere minimum contacts. See Provident Nat'l Bank v. California Federal Sav. & Loan Assoc., 819 F.2d 434, 437 (3d Cir. 1987). These contacts must show that the defendant carried on a continuous and substantial part of its general business within the commonwealth. Id. at 438; Gehling v. St. George's School of Med., 773 F.2d 539, 541 (3d Cir. 1985). In order to determine specifically if an out-of-state corporation can be held liable for negligent conduct that occurs outside the forum state, courts have continued to apply this high standard. See Gehling, 773 F.2d at 541; see also Reliance Steel Prods. Co. v. Watson, Ess, Marshall, & Engass, 675 F.2d 587, 589 (3d Cir. 1982). In order to show that a court may exercise general personal jurisdiction, the facts showing continuous and substantial forum affiliations must be "extensive and persuasive." Reliance Steel, 675 F.2d at 588-89.

Ferro, 2007 U.S. Dist. LEXIS 88954, at *6-8. See also, e.g., Provident Nat'l Bank, 819 F.2d at 437 ("When evaluating contacts with a forum, a court should look to a party's 'purposeful and extensive availment' of the forum.").

In determining whether general jurisdiction should be exercised, "courts traditionally look to whether the defendant has ever been licensed to do business; owned real property; maintained a place of business; employed an agent; maintained a mailing address; held a bank account; or paid taxes in the forum state." Fellheimer v. Fairmount Hotels & Resorts, Inc., Civil Action No. 03-1677, 2003 U.S. Dist. LEXIS 26733, at *7 (E.D. Pa. Nov. 19, 2003) (citing Litman v. Walt Disney World Co., Civil Action No. 01-CV-3891, 2002 U.S. Dist. LEXIS 5115, at *18 (E.D. Pa. March 26, 2002) (same)); see also Bayada Nurses, Inc. v. Blue Cross Blue Shield, Civil Action No. 08-1241, 2008 U.S. Dist. LEXIS 58218, at *14 (E.D. Pa. July 30, 2008) (citing Ajax Enters. v. Szymoniak Law Firm, P.A., No. 05-5903, 2008 U.S. Dist LEXIS 29582, at *2 (D.N.J. Apr. 10,

2008) ("Examples of contacts that could establish general jurisdiction in the forum state are the existence of: facilities, offices, employees, registered agents, real property, telephone listings or bank accounts.")); Olympia Steel Bldg. Sys. Corp. v. General Steel Domestic Sales, LLC, No. 06-1597, 2007 U.S. Dist. LEXIS 30131, at * 4 (W.D. Pa. Apr. 24, 2007) (same); Goodsport Mgmt. (USA), Inc. v. Special Events, Inc., 71 F. Supp. 2d 477 (E.D. Pa. 2001) (concluding that general personal jurisdiction was lacking because "there [wa]s no evidence in the record concerning...corporate citizenship" and that defendant "d[id] not own or lease any real property, d[id] not have a telephone number, office, bank account or mailing address, and d[id] not advertise in the Commonwealth of Pennsylvania"). See also, e.g., Hirsch v. Blue Cross, Blue Shield of Kansas, 800 F.2d 1474, 1478 (9th Cir. 1986) (concluding that District Court in California did not have general jurisdiction over defendant which was not authorized nor licensed to do business in California, was not registered to do business there, did not maintain an office or mailing address there, had no agent for service of process, representatives or employees there, and paid no state taxes there).

In this matter, the record established by jurisdictional discovery reveals the following:[4]

1. Cornell is a foreign corporation.

2. Cornell has been registered with the Pennsylvania Secretary of State, and thus licensed to do business in Pennsylvania, since 1952.

---

[4] The Court is unpersuaded by arguments concerning Cornell's ornithology department storage space, Cornell's isolated legal actions in Pennsylvania courts, Cornell's occasional use of Pennsylvania contractors and vendors, the number of Cornell students who come from Pennsylvania, and the participation of Cornell teams in athletic events that happen to occur in Pennsylvania. Although other Courts have considered several of these factors in their overall analysis, here the Court finds them to be inconsequential and/or not outcome determinative here. As such, the Court will not address them further.

3. Cornell operates a Middle Atlantic Regional Office (the "MARO") in Pennsylvania.

4. Cornell owns and directly controls the MARO.

5. The MARO has been in operation for 45 years.

6. The MARO is located in a 1300 square-foot office suite with a Pennsylvania mailing address.[5] The office suite consists of three offices, a conference room, and a reception area.

7. The MARO has multiple active telephone lines, a fax line, and multiple computers – all paid for and maintained by Cornell.

8. Full-time and part-time Cornell staff are stationed at and run the MARO. The highest-ranking Cornell staff member in the office, Director Jennifer Heinis, reports directly to a Cornell Senior Director located on the university's main campus.

9. Cornell pays the salaries of its employees stationed at the MARO (over $1.2 million gross for the last three years alone).

10. Cornell pays Pennsylvania state and local taxes for its employees stationed at the MARO. In order to do so, Cornell maintains a Pennsylvania Tax ID number.

11. Cornell pays for Pennsylvania workers compensation insurance for its employees stationed at the MARO.

12. Cornell has a commercial lease with a Pennsylvania landlord for the MARO, under which Cornell pays a substantial amount of rent. The lease also requires Cornell to (a) maintain

---

[5] Specifically, the current address is 74 Pottstown Pike, Suite 1006, Eagle, Pennsylvania, 19480-0716 (Chester County). The MARO has previously resided at two other addresses within the Eastern District of Pennsylvania (in Montgomery County and Delaware County).

five million dollars in insurance coverage for the MARO, and (b) defend itself and its Pennsylvania landlord for all claims resulting from Cornell's use of the MARO.

13. Cornell pays gas and electric bills to Pennsylvania utilities for the MARO.

14. The MARO has a freestanding signboard that says "Cornell University." This sign advertised Cornell to Pennsylvania residents, and, according to MARO staff, resulted in walk-in foot traffic.

15. MARO employees conduct daily work on behalf of Cornell University; through the MARO, Cornell conducts business with perspective students, alumni, and donors, who are all allowed to enter the MARO suite.

16. Cornell maintains only four other regional offices in the United States to act on its behalf.

Based on this more complete evidence of record, the Court now concludes that Cornell has continuous and systematic contacts with the Eastern District of Pennsylvania such that it could reasonably anticipate being haled into court there.[6] As detailed, *supra*, the facts showing continuous and substantial forum affiliations are extensive and persuasive. In short, Cornell is a foreign corporation that is licensed to do business in Pennsylvania, and it does real business[7] here

---

[6] Cornell notes in its brief that Ms. Dorn affirms that "...Cornell has not conducted continuous or systematic business in Pennsylvania, or had any contacts with the Commonwealth of Pennsylvania beyond those listed in the University's responses to plaintiff's jurisdictional discovery." Cornell Sup. Br. at 11. While the Court understands Associate Counsel Dorn's advocacy position, the first clause of this statement is obviously a self-serving conclusion of law and does not control here. As to the second clause, the Court by this Memorandum has found those contacts to be sufficient.

[7] Cornell de-emphasizes the work performed in/by the MARO as mere "alumni relations" unrelated to "educational objectives." The Court finds these terms to be nebulous at best. The record reflects that, via the MARO, Cornell engages in fundraising from both alumni and outside donors. In addition, the record reflects that Cornell explicitly advertises itself by a clearly visible sign reading "Cornell University" located outside the MARO that generates walk-ins from both

in the Eastern District. Cornell operates the MARO in the Eastern District via a fully-staffed office with leased property, supplied equipment, paid salaries, paid utilities, paid taxes, and paid insurance.[8] Moreover, the MARO (one of only five active regional offices) does more than would a loosely-affiliated volunteer "alumni club." These are not isolated contacts. Under these facts and circumstances, the exercise of general personal jurisdiction in the Eastern District of Pennsylvania does not offend traditional notions of fair play and substantial justice.

The Court's conclusion follows from use of the analytical rubric directed by Third Circuit and Eastern District of Pennsylvania precedent, as outlined in this Memorandum. Furthermore, given the benefit of the additional record evidence, the Court finds that the contacts here are distinguishable from those in Gehling v. St. George School of Medicine, Ltd., 773 F.2d 539 (3d Cir. 1985), Gallant v. Trustees of Columbia Univ., 111 F. Supp. 2d 638 (E.D. Pa. 2000), Kendall v. Trustees of Amherst College, Civil Action No. 06-4983, 2007 WL 172396, (E.D. Pa. Jan. 18, 2007), and Corrales Martin v. Clemson University, Civil Action No. 07-586, 2007 WL 4531028 (E.D. Pa., Dec. 20, 2007).[9]

---

alumni and perspective students. The Court will not engage in speculation as to what Cornell may technically consider to be "educational objectives."

[8] The Court finds that the fact that money outlays come "from Ithaca" is not outcome determinative. Having a bank account physically located in Pennsylvania is merely one of many potential factors in the Court's analytical rubric. The Court is not surprised that a major educational institution would manage its cash outlays from its core campus despite having extensive contacts with other locations.

[9] Most notably, Cornell's corporate registration with Pennsylvania's Department of State, and Cornell's significant and ongoing use of real property in Pennsylvania to conduct Cornell's business through the MARO, are not paralleled in these cases.

**III.     Venue**

28 U.S.C. §1391, titled "Venue generally" provides in relevant part as follows:

> "(a) A civil action where jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.
>
> \*       \*       \*       \*
>
> (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced..."

Tumbltrak moves for dismissal solely due to improper venue pursuant to Fed. R. Civ. P. 12(b)(3). By doing so, Tumbltrak has waived any challenge to personal jurisdiction. See Fed. R. Civ. P. 12(g) and (h) (a defendant seeking to challenge personal jurisdiction must consolidate its challenge with a challenge to venue or the personal jurisdiction challenge is waived). As such, the Court deems Tumbltrak to reside in the Eastern District of Pennsylvania. As discussed, *supra*, the Court has determined that personal jurisdiction exists over Cornell; it is therefore deemed to also reside in the Eastern District of Pennsylvania.

Accordingly, because all defendants reside in the same state, see 28 U.S.C. §1391(c), venue is proper in this diversity action under 28 U.S.C. §1391(a)(1).

## IV.     Conclusion

The Court exercises general personal jurisdiction over both defendants.  Venue is proper.  Both Motions will be denied.  An appropriate Order follows.