IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RANDALL DUCHESNEAU,        :       CIVIL ACTION
                                          :
            Plaintiff,           :       NO. 08-4856
                                          :
       v.                         :
                                          :
CORNELL UNIVERSITY, *et al.*,     :
                                          :
          Defendants.         :

**Jones, II, U.S.D.J.**                                           **July 31, 2012**

<u>**MEMORANDUM**</u>

Before the Court is Defendant Tumbl Trak's ("T-Trak") Motion for Partial Summary Judgment (Docket No. 169); Cornell University's Motion for Summary Judgment (Docket No. 171); Cornell University's Motion for Partial Summary Judgment on Punitive Damages (Docket No. 172); and extensive briefing related thereto.[1]

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). To defeat a motion for summary judgment, disputes must be both (1) material, meaning concerning facts that will affect the outcome of the issue under

---

[1] This matter has been crawling along, with a stunning amount of motion practice and briefing, for years now. The parties and this Court are well aware of the tortured factual and procedural background of this case, and setting it forth at length again here would be a waste of judicial resources. Rather, I limit the discussion herein to specific facts as may be relevant to resolution of the Motion.

substantive law, and (2) genuine, meaning the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. An issue is genuine if the fact finder could reasonably return a verdict in favor of the nonmoving party with respect to that issue. Anderson, 477 U.S. at 249. In reviewing a motion for summary judgment, the court does not make credibility determinations and "must view facts and inferences in the light most favorable to the party opposing the motion." Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1127 (3d Cir. 1995).

## I.    T-Trak's Motion for Partial Summary Judgment

T-Trak seeks partial summary judgment on three bases: (1) Plaintiff cannot establish a prima facie case of failure to warn; (2) Plaintiff is not entitled to punitive damages; and (3) Plaintiff assumed the risk of serious injury when using the Tumbl Trak apparatus ("TTA"). I address these *seriatim*.

### 1.    Failure to Warn

Under New York law,[2] to establish a prima facie case of failure to warn, a Plaintiff must show that (1) the defendant-manufacturer had a duty to warn; (2) the manufacturer breached such duty and so the product is rendered defective, *i.e.*, reasonably certain to be

---

[2] On November 23, 2011, U.S. Magistrate Judge Lynne A. Sitarski analyzed choice of law inquiries in this case and determined New York law applies throughout. Additionally, no party disputes the application of New York law to the failure to warn and assumption of risk claims here. Accordingly, I apply New York law to those claims.

2

dangerous; (3) the product's defect was the proximate cause of the injury to plaintiff; and (4) the plaintiff suffered loss or damage. Humphrey v. Diamant Boart, Inc., 556 F. Supp. 2d 167, 179 (E.D.N.Y. 2008); McCarthy v. Olin Corp., 119 F.3d 148, 156 (2d Cir. 1997). The duty to warn can be breached by either "the complete absence of warnings as to a particular hazard," or "the inclusion of warnings which are insufficient." Johnson v. Johnson Chem. Co., 588 N.Y.S.2d 607, 610 (N.Y. App. Div. 1992). The adequacy of a warning is normally a question of fact to be determined at trial. Nagel v. Bros. Int'l Foods, Inc., 825 N.Y.S.2d 93, 95 (N.Y. App. Div. 2006).

Plaintiff has the burden of proving that T-Trak's failure to warn was a proximate cause of his injury. See Mulhall v. Hannafin, 841 N.Y.S.2d 282, 285 (N.Y. App. Div. 2007). This burden includes adducing proof that a user of the product at issue would have read and heeded a warning had one been given. Sosna v. Am. Home Prods., 748 N.Y.S.2d 548, 549 (N.Y. App. Div. 2002). Conversely, failure to warn claims can be decided as a matter of law against an injured party where the injured party was "fully aware of the hazard through general knowledge, observation, or common sense" or where the hazard is "patently dangerous." Humphrey, 556 F. Supp. 2d at 179-80 (citing Liriano v. Hobart Corp. (*Liriano I*), 700 N.E.2d 303, 308 (1998)).

T-Trak contends that Plaintiff cannot establish a prima facie case of failure to warn where (1) the risk of injury was open and obvious and (2) Plaintiff did not actually read the warnings that were on the TTA. First T-Trak argues that "the risk of injury while performing a back flip was open and obvious and readily discernable to Plaintiff." Def.'s Mot. Part. Summ. J. (hereinafter "Def.'s Br.") 21. More specifically, T-Trak opines that general knowledge dictates that "an individual might land on his head if he attempts a back flip on a rebounding [TTA]." Id. T-Trak relies on, *inter alia*, the following record evidence:

- "Plaintiff, educated in physics, knew that what goes up will come down." Id. 22; see id. Ex. H, at 380-81.
- Plaintiff signed a waiver that stated he understood the risks and dangers associated with gymnastics. Id. Ex. F.
- There was a small warning label on the TTA which stated that any activity "creates the possibility of catastrophic injury, including paralysis or even death from falling on the head or neck. Id. Ex. G.
- Plaintiff "was aware of the safety concept of spotting and had done it in high school as a member of the cheerleading squad." Id. 23; see id. Ex. H, at 432.

Based on these facts, T-Trak contends that "common sense" would have informed an individual

that he or she was risking landing on their head by using the TTA, and, as such, T-Trak had no

legal duty to warn Plaintiff. Id. 24.

However, there are significant disputes of material fact as to which, if any,

hazards associated with the TTA were open and obvious (i.e., could be objectively ascertained)

by a similarly-situated novice gymnast. Notably, Plaintiff has produced the report of warnings

expert Dr. William J. Vigilante Jr., which, inter alia, cited numerous deficiencies in the warnings

on the TTA: the warnings on the TTA were blurred and could not be read even at a close

distance; the warnings were located on either end of the TTA, not in the middle where a user

would mount it; and the warnings were located adjacent to a cartoon depicting teddy bears

conducting unspotted, unsupervised backflips on the TTA. Pl.'s Resp. Def. T-Trak's Mot. Part.

Summ. J. (hereinafter "Pl.'s Resp. Br.") Ex. D, at 8-9. Dr. Vigilante's report clearly suggests

there were conflicting messages as to (1) the dangers associated with particular uses of the TTA;

(2) how novices should perform backflips off the TTA; and (3) what is the appropriate level of

supervision for safety purposes while using the TTA. Dr. Vigilante's view of the facts is

obviously in conflict with that of T-Trak. Cf. Repka v. Arctic Cat, Inc., 798 N.Y.S.2d 629, 631

4

(N.Y. App. Div. 2005) (triable issue of fact concerning sufficiency of warnings raised through expert).

Apparently as a fallback position, T-Trak also asserts that because Plaintiff never sought to view the warnings prior to his accident, he cannot advance a failure to warn claim. However, failure to read the TTA's warnings "does not necessarily sever the causal connection between the alleged inadequacy of those warnings, on the one hand, and the occurrence of the accident, on the other." Johnson, 588 N.Y.S.2d at 611. This fact alone is insufficient to secure summary judgment. See Humphrey, 556 F. Supp. 2d at 180-81 (holding plaintiff's admission that he did not read the warning label or operating instructions on equipment not dispositive under New York law in connection with failure to warn claim). Indeed, there is more than just that fact here. According to the summary judgment record *none* of the many fact witnesses in this case (including Plaintiff) testified that they ever saw *any* warning on the TTA.[3] Furthermore, Plaintiff himself has submitted sworn testimony that if he had seen what Dr. Vigiliante characterized as a proper warning, Plaintiff *would have heeded the proper warning* and either never have attempted a backflip or done so only with the assistance of a qualified coach or spotter.[4] See Pl.'s Resp. Br. Ex. T.

---

[3] This evidence is buttressed by the fact that T-Trak's own warnings expert testified at his deposition that the warnings on the TTA were deficient, illegible, and violative of relevant industry standards pertaining to size. Pl.'s Resp. Br. Ex. S.

[4] I do not find T-Trak's argument that Plaintiff submitted a "sham affidavit" to be convincing.

5

In sum, this evidence of record establishes sufficient material disputes of fact as to the level of awareness Plaintiff or any other objective, novice gymnast would have had concerning the danger of specific injuries while performing specific maneuvers on the TTA. Moreover, T-Trak has been unable to adduce undisputed evidence that Plaintiff would have disregarded a proper warning.  Accordingly, summary judgment on the failure to warn claim is inappropriate.

2.    Assumption of Risk

T-Trak contends it is entitled to summary judgment on Plaintiff's negligence claim based on the principle of assumption of risk.[5]  To prove a prima facie case of negligence, a plaintiff must establish (1) existence of a duty of the defendant to the plaintiff; (2) breach of the duty; and (3) that the breach of the duty was a proximate cause of the injury to the plaintiff. Martinez v Capital One, N.A., -- F. Supp. 2d --, No. 10 Civ. 8028(RJS), 2012 WL 1027571, at *10 (S.D.N.Y. Mar. 27, 2012).  Assumption of risk operates to eliminate the duty of care to a plaintiff, and can therefore be a complete bar to recovery for negligence.  Anderson v. Hedstrom Corp., 76 F. Supp. 2d 422, 431 (S.D.N.Y. 1999); Turcotte v. Fell, 502 N.E.2d 964, 967-68 (1986).  To establish assumption of risk, a defendant bears the burden of establishing that the "plaintiff was aware of the defective or dangerous condition and the resultant risk."  Hedstrom, 76 F. Supp. 2d at 432 (citing Lamey v. Foley, 594 N.Y.S.2d 490, 495 (N.Y. App. Div. 1993)). This determination depends in part on the openness and obviousness of the risk.  Id.

---

[5] This argument applies only to Plaintiff's negligence claim, as New York law does not favor an assumption of risk defense to strict liability claims.  Auto. Ins. Co. of Hartford v. Electrolux Home Prods., Inc., 2011 WL 1434672, at *2 (W.D.N.Y. 2011).

Assumption of risk is frequently applied to claims arising out of participation in sporting events. See, e.g., Goodlett v. Kalishek, 223 F.3d 32, 34 (2d Cir. 2000) (airplane racing); Rochford v. Woodloch Pines, Inc., 824 F. Supp. 2d 343, 349-51 (E.D.N.Y. 2011) (golf); Ducrepin v. United States, 964 F. Supp. 659, 664-65 (E.D.N.Y. 1997) (basketball); Mc Duffie v. Watkins Glen Int'l, Inc., 833 F. Supp. 197, 201-02 (W.D.N.Y. 1993) (auto racing); Morgan v. State, 90 N.Y.2d 471, 481-82 (1997) (bobsledding and karate, but not tennis where facility's negligence in failing to repair torn net unduly increased the risk); Benitez v. N.Y.C. Bd. of Educ., 541 N.E.2d 29, 33-34 (1989) (football); Joseph v. N.Y. Racing Ass'n, 809 N.Y.S.2d 526, 529 (N.Y. App. Div. 2006) (horseback riding); Hawley v. Binghamton Mets Baseball Club Inc., 691 N.Y.S.2d 626, 627-28 (N.Y. App. Div. 1999) (baseball).  It has even been applied in some (but not all) cases involving jumping on a trampoline.[6]  However these cases have a unifying theme –

_____

[6] Application of assumption of risk is a fact-specific endeavor, including in trampoline cases, which tend to be decided depending on whether the plaintiff was aware of and appreciated the risk in using the trampoline. A plaintiff may prevail where he adduces evidence that he was unaware of the risk of using a trampoline and that he used the trampoline in an ordinary fashion. See, e.g., Hedstrom, 76 F. Supp. 2d at 427, 435 (finding no assumption of risk where plaintiff was a total beginner who did not see warning label and who used trampoline in a "fairly typical manner"); Kroll v. Watt, 764 N.Y.S.2d 731, 731 (N.Y. App. Div. 2000) (affirming denial of summary judgment on assumption of risk where plaintiff's awareness of risk of trampoline tipping over and thus causing plaintiff's injury was a triable issue of fact).  On the other hand, assumption of risk applies where the risk of the activity is inherent or where the injured party fully understands, appreciates, and voluntarily assumes the risk through participation.  Goodlett, 223 F.3d at 36-37.  New York courts have barred the recovery of plaintiffs injured while jumping on a trampoline where the plaintiff was aware of the risk or performed a particularly risky maneuver.  See, e.g., Yedid v. Gymnastic Ctr., 824 N.Y.S.2d 299, 300 (N.Y. App. Div. 2006) (affirming application of assumption of risk where plaintiff failed to provide evidence that he was unaware of risk of performing front flip on trampoline); Koubek v. Denis, 799 N.Y.S.2d 746, 747 (2005) (finding assumption of risk where plaintiff was aware and appreciative of risk of using trampoline and used it nonetheless); Liccione v. Gearing, 675 N.Y.S.2d 728, 728 (N.Y. App. Div. 1998) (holding assumption of risk applicable where plaintiff ignored sign warning against use of trampoline by two or more participants at the same time and then engaged in such activity).

7

clear risks that were known yet disregarded by the plaintiff, with no negligence by the defendant that enhanced the risk.  In cases where the plaintiff was unaware of the risk, or where the defendant's negligence amplified the risk, summary judgment has not been granted.  See, e.g., Clarke v. Peek 'N Peak Recreation, Inc., 551 F. Supp. 2d 159, 163 (W.D.N.Y. 2008) (ski resort owner's alleged negligence may have enhanced assumed risk); Hedstrom, 76 F. Supp. 2d at 435-36 (beginning trampoline user unaware and not sufficiently warned of risks); Repka, 798 N.Y.S.2d at 632-33 (assumed risk unduly increased by use of defective snowmobile without adequate warnings); Kroll, 764 N.Y.S.2d at 731 (plaintiff unaware of risk of trampoline's defect).  T-Trak argues vociferously that "Plaintiff *should* have been aware of the risk of injury." Def.'s Br. 31 (emphasis added).  While it is true that Plaintiff had some experience with cheerleading and gymnastics, there is evidence he was a novice nonetheless.  Additionally, as discussed *supra*, there is direct testimony that Plaintiff did not view any warnings and thus was not made explicitly aware of the contents thereof.  There is further, disputed testimony as to the reasons why Plaintiff was unaware of the warnings, including evidence that the warnings were patently insufficient and no participant saw or became aware of their contents that day.  The survey of trampoline cases herein makes it clear that the use of a trampoline has not been deemed inherently risky as a matter of New York law.  All of these relevant disputes – namely, as to Plaintiff's expertise, knowledge, the sufficiency and quality of the warnings, and the obvious nature of the risk to a casual user of the TTA – preclude this Court from absolving T-Trak on the grounds of assumption of risk.  T-Trak's duty to Plaintiff, if any, is properly an issue for trial.

3.    Punitive Damages

U.S. Magistrate Judge Lynne A. Sitarski thoroughly and cogently examined choice of law issues in this case in deciding Defendant Cornell University's Motion to Establish Applicable Law.  See Duchesneau v. Cornell Univ., No. 08-4856, 2011 WL 5902155, at *1 (E.D. Pa. Nov. 23, 2011) (order granting applicable law).  T-Trak did not participate in the Motion to Establish Applicable Law.  Rather, T-Trak asserts in the instant Motion that, while New York law is almost universally applicable in this case, Michigan law operates to bar recovery of punitive damages.  In short, T-Trak contends that because it is domiciled in Michigan and the alleged punitive conduct (design and labeling of the product) occurred in Michigan, Michigan law should apply to Plaintiff's claim for punitive damages.  Unsurprisingly, Michigan law bars punitive damage awards unless expressly authorized by statute, which is not the case here.  See Gilbert v. DaimlerChrysler Corp., 685 N.W.2d 391, 400 (2004).  Plaintiff maintains that New York law properly governs all aspects of this matter, including his punitive damages claim.  New York law allows a plaintiff to recover punitive damages, so as to punish gross misbehavior for the public good.  Clinton v. Brown & Williamson Holdings, Inc., 498 F. Supp. 2d 639, 653 (S.D.N.Y. 2007).

Judge Sitarski aptly laid out the applicable conflicts of law framework and conducted a thorough analysis of asserted interests, and this Court need not repeat the legal discussion at length here.  Judge Sitarski concluded that New York law applied to Plaintiff's claims against Cornell, including with regard to punitive damages and contributory negligence.  I reach the same conclusion as to T-Trak for substantially the same reasons.  Here, T-Trak knew the TTA was to be delivered and used in New York, and, indeed, the TTA was used continuously

9

in New York for many years prior to the accident.  Generally speaking, courts applying the

Pennsylvania choice of law contacts analysis to product liability matters have applied the law of

the state where the product was used and where the accident occurred.  <u>Shields v. Consol. Rail

Corp.</u>, 810 F.2d 387, 399-400 (3d Cir. 1987); <u>U.S. Airways, Inc. v. Elliott Equip. Co., Inc.</u>, 2008

WL 4461847 (E.D. Pa. Sept. 29, 2008).  Plaintiff's accident was non-fortuitous, and therefore

great deference is given to New York as to the law which should apply.  <u>LeJeune v. Bliss-Salem,

Inc.</u>, 85 F.3d 1069 (3d Cir. 1996).

   Under the contacts analysis, New York has many compelling interests here: (1)

the TTA is located in New York; (2) the accident occurred in New York; (3) Cornell contracted

to purchase the TTA in New York; (4) Plaintiff was a student in New York; (5) Plaintiff,

although a Pennsylvania resident, received treatment for his injuries in New York; and (6) the

key Waiver Agreement in this case governs activities in New York and has its validity

determined by New York law.  The contacts with Michigan are markedly less.  T-Trak's

headquarters is in Michigan.  Some design and testing of the TTA took place in Michigan.

However, the TTA and its warnings were designed by a Washington resident, and the component

parts of the TTA were manufactured in multiple states other than Michigan (including the pads

which containing the warnings).  The actual T-Trak dealer who negotiated the New York

contract of sale for the TTA with Cornell was based in Georgia.  Finally, the TTA was assembled

in New York by Cornell from constituent pieces delivered from various locations.[7]

---

[7] These circumstances are readily distinguishable from those in <u>Kelly v. Ford Motor Co.</u>,
933 F. Supp. 465 (E.D. Pa. 1996), upon which T-Trak heavily relies.  In <u>Kelly</u>, much of the
design, testing, assembly, and warning label placement occurred in various Michigan locales
under the close coordination of Ford.  As mentioned above, T-Trak did not even manufacture or
assembly any parts of the TTA in Michigan.  <u>Kelly</u> is not persuasive.

Accordingly, I conclude New York law applies to the question of punitive damages against T-Trak. Upon review of the record, I find Plaintiff has adduced sufficient evidence to allow the claim for punitive damages to proceed.

## II.    Cornell's Motion for Partial Summary Judgment on Punitive Damages

Cornell claims that Plaintiff has failed to adduce any evidence that could justify punitive damages under New York law. Plaintiff responds that "Cornell's relevant conduct is *textbook-appropriate*" in terms of punitive damages for multiple reasons: (1) Cornell ran its own gymnasium without rules, standards, coaching, instruction, screening, supervision, and spotting; (2) multiple experts have opined that Cornell's conduct in that regard was, *inter alia*, "highly dangerous," "indefensible," "outrageous," "reckless," and "an accident waiting to happen"; and (3) Cornell violated "every applicable mainstream gymnastics safety standard, [and] systematically allowed a wholly-incompetent individual to supervise the gymnasium." See Pl.'s Resp. Opp'n Def. Cornell's Mot. Summ. J. Punit. Damages 2-3.

As discussed *supra*, New York law allows a plaintiff to recover punitive damages, so as to punish gross misbehavior for the public good. Clinton, 498 F. Supp. 2d at 653. An award of punitive damages would be proper "where the conduct of the party being held liable evidences a high degree of moral culpability, or where the conduct is so flagrant as to transcend mere carelessness, or where the conduct constitutes willful or wanton negligence or recklessness." Buckholz v. Maple Garden Apts., LLC, 832 N.Y.S.2d 255, 256 (N.Y. App. Div. 2007); see also Mahar v. U.S. Xpress Enters., 688 F. Supp. 2d 95, 110 (N.D.N.Y. 2010) (allowing punitive damages in rare cases of egregious and willful conduct that is morally culpable); Black v. George Weston Bakeries, Inc., No. 07-CV-853S, 2008 WL 4911791, at *7

11

(W.D.N.Y. Nov. 13, 2008) (permitting punitive damages where conduct constitutes conscious disregard of others); Bohannon (*ex rel.* Estate of Dolik) v. Action Carting Envtl. Servs., Inc., No. 06-CV-5689 (JG), 2008 WL 2106143, at *3 (E.D.N.Y. May 20, 2008) (recognizing utter indifference to the safety of others warrants granting punitive damages).

Upon review of the record, I concur with Plaintiff that there is more than enough evidence to allow Plaintiff's punitive damages claim to proceed.  There is substantial evidence of record concerning purported behavior of Cornell that could be found to rise to the level of egregious recklessness and moral culpability necessary to trigger punitive damages.  There are major disputes of fact as to whether Cornell failed to exhibit care to such a degree as would amount to wanton behavior or recklessness.  Cornell's argument primarily rests on its self-serving conclusion that – despite evidence offered to the direct contrary – this case just does not involve one of those rare, egregious instances of recklessness that is punishable by punitive damages.  That, however, is properly the jury's decision.  Summary judgment is inappropriate, and the claim for punitive damages shall remain.

III.   **Cornell's Motion for Summary Judgment**

Cornell moves for summary judgment on two bases: (1) Plaintiff assumed the risk of using the TTA and Cornell had no duty to supervise the use of gymnastic equipment by novices, and (2) there is no evidence as to causation concerning Cornell.  There are so many material disputes of fact between Plaintiff and Cornell that a lengthy explication of them would be a waste of resources.  Suffice it to say that, despite occasional rhetoric to the contrary, Plaintiff and Cornell disagree about nearly every major fact or opinion of record that relates to the issues

raised in the Motion.[8]  Specific to assumption of risk (discussed *supra*), there are considerable

disputes over whether Plaintiff knew or appreciated the risks of the TTA.  Cornell's assertions to

the contrary appear to be mostly self-serving statements.  Because Plaintiff has adduced plentiful

evidence (testimony, admissions, experts) in support of the position that he was not aware of the

relevant risk and could not be expected to be aware of that risk, summary judgment is obviously

inappropriate.[9]

        Cornell's caselaw presents numerous, distinct factual circumstances, none of

which are analogous here.  See, e.g., Yedid v. Gymnastic Ctr., 824 N.Y.S.2d 299, 300 (N.Y.

App. Div. 2006) (finding experienced gymnast with six years of instruction assumed known risk

of performing front flip on trampoline); Koubek v. Denis, 799 N.Y.S.2d 746, 747 (N.Y. App.

Div. 2005) (holding plaintiff assumed risk of using trampoline where she failed to adduce

evidence that she was unaware of the potential for injury); Palozzi v. Priest, 720 N.Y.S.2d 676,

676 (N.Y. App. Div. 2001) (affirming application of assumption of risk to teenager injured while

"fake wrestling" on trampoline); Liccione v. Gearing, 675 N.Y.S.2d 728, 729 (N.Y. App. Div.

1998) (noting plaintiff assumed risk of "double jumping" despite warnings on trampoline that

were deemed adequate as a matter of law); Williams v. Lombardini, 238 N.Y.S.2d 63, 64-65

(N.Y. Sup. Ct. 1963) (determining plaintiff assumed risk where he admitted seeing rule that

prohibited "difficult tricks" but attempted front flip on trampoline anyway).  As discussed *supra*,

---

      [8] These two parties have repeatedly filed briefs of excessive length (50-100 pages each), including unnecessary bolded or italicized text for emphasis, in which they highlight disputes of fact *ad infinitum*.

      [9] This conclusion is buttressed by the fact that, as discussed *supra*, there are even disputes of material fact as to whether (1) the risk of harm was obvious, open, or hidden, and (2) the risk of harm was enhanced by Cornell's own actions.

summary judgment based on assumption of risk is inappropriate where there is a question as to appreciation or understanding of risk.[10]  See Hedstrom, 76 F. Supp. 2d at 435-36 (recognizing no assumption of risk by beginning trampoline user who was unaware and not sufficiently warned of risks); Kroll, 764 N.Y.S.2d at 731 (deciding plaintiff did not assume risk because she was unaware of trampoline's defect).  Application of assumption of risk at summary judgment is especially inappropriate here because New York law disfavors using the doctrine in cases where there are allegations of reckless or intentional conduct, or concealed or unreasonably increased risks.[11]  Morgan, 90 N.Y.2d at 485; see, e.g., Charles v. Uniondale Sch. Dist. Bd. of Educ., 937 N.Y.S.2d 275, 276-77 (N.Y. App. Div. 2012) (denying summary judgment where issues of fact existed as to whether defendant unreasonably increased risk by failing to provide head and face protection to plaintiff lacrosse player); Miller v. Holiday Valley, Inc., 925 N.Y.S.2d 785, 788 (N.Y. App. Div. 2011) (rejecting summary judgment because plaintiff submitted evidence that

---

[10] Cornell argues that the warning notice on the TTA itself establishes total assumption of risk.  However, a vast portion of the evidence in this case (almost all of it disputed) is about whether the TTA's warnings were seen, sufficient, or effective.  In other words, Cornell relies on a highly disputed factual conclusion concerning the adequacy of the warning to justify summary judgment on assumption of risk grounds.  This Court cannot follow.

[11] I am completely unpersuaded by Cornell's argument concerning its *total* lack of a duty of care to a novice student using equipment in the Teagle Gymnasium.  N.Y. Gen. Oblig. Law § 5-326 (McKinney 1976) (voiding gymnasium waivers); Eddy v. Syracuse Univ., 78 A.D.2d 989 (App. Div. 1980) (concluding questions of negligence, foreseeability of injury, and duty to protect gym users are all proper issues for a jury); Lorenzo v. Monroe Comm. Coll., 72 A.D.2d 945 (1979) (finding questions of fact existed as to whether defendant provided adequate supervision in gymnasium).  Much of Cornell's arguments are bootstrapped onto a conclusion of assumption of risk – *i.e.*, because a student assumed the risk, the defendant college owes no duty with respect to the dangers inherent in the activity.  As discussed, this Court cannot conclude at this stage that there was any assumption of risk.  In addition, this Court will not revisit its previous rulings as to the issue of the prior academic year waiver despite Cornell's apparent invitation.

14

defendant's negligent failure to stop ski lift caused plaintiff's injuries); <u>Repka</u>, 798 N.Y.S.2d at 632-33 (dismissing summary judgment motion because lack of adequate warnings may have unduly enhanced snowmobile's concealed defect).  In short, I do not find that Cornell is entitled to judgment as a matter of law based on the assumption of risk doctrine.

    Nor can I conclude that Cornell is entitled to summary judgment based upon causation.  There is extensive, often-conflicting evidence concerning causation.  Plaintiff has adduced significant amounts of evidence concerning Cornell's systemic negligent conduct leading up to the accident.  In addition, Plaintiff has offered evidence from multiple experts that goes directly to duty of care and causation (*e.g.*, that the lack of spotting equipment and spotters proximately caused Plaintiff's injuries; that the lack of warnings failed to notify Plaintiff of the risks associated with the TTA; that Cornell's "outrageous" conduct in organizing and supervising Plaintiff's use of the gymnasium directly contributed to Plaintiff's accident).[12]  Cornell may strongly disagree with these experts, but it is not entitled to have them ignored in favor of summary judgment.

**IV. Conclusion**

    Tumbl Trak maintains that Plaintiff cannot prove it inadequately warned him against use of its product.  Cornell suggests that this case involves nothing more than a "luckless accident" that resulted from Plaintiff's voluntary participation in vigorous athletic activity.  Plaintiff disagrees.  He believes that he was harmed by (1) a device with grossly inadequate warnings, and (2) an institution which engaged in a course of conduct of gymnasium operation

---

[12] Cornell spends considerable time "debunking" these experts in briefs, often by reference to the testimony of others.  By doing so, Cornell highlights some of the very disputes that preclude summary judgment.

and supervision which was reprehensible and reckless.  Based on the record before me, Plaintiff

is entitled to put these questions to a jury.

An appropriate Order follows.