IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


RANDALL DUCHESNEAU,   :  CIVIL ACTION
           :
    Plaintiff,    :  No. 08-4856
           :
   v.       :
           :
CORNELL UNIVERSITY, *et al.*,  :
           :
    Defendants.   :


**Jones, II, U.S.D.J.**          **February 19, 2013**

## MEMORANDUM

   Presently before the Court is Plaintiff Randall Duchesneau's Motion for a New Trial (Dkt. No. 486), Defendant Cornell University's Response to Plaintiff's Motion for a New Trial (Dkt. No. 488), Plaintiff's Reply thereto (Dkt. No 494), and Defendant's Supplemental Memorandum (Dkt. No. 497).[1]  For the reasons set forth below, Plaintiff's Motion is DENIED.

**1) Background**

   This case involves a tragic accident that occurred at Cornell University on October 12, 2006, which resulted in the paralysis of the Plaintiff.  Given the well-documented nature of this case, there is no need for a complete recitation of the background.  The accident has been the subject of protracted litigation, involving in excess of 260 evidentiary motions, and numerous hearings which culminated in an eighteen-day trial. Ultimately, the jury returned a verdict that the Defendant, Cornell University, was not negligent.  Not only has this litigation been drawn out over half a

---

   [1]  The Court has thoroughly reviewed the parties' various submissions and the robust record in this case and has determined that no oral argument is warranted.

decade, it has been colored by the unnecessarily vitriolic behavior of counsel.

As this Court has previously discussed, the evidentiary issue of "waiver" has been prominent throughout this litigation.  Perhaps it should come as no surprise that "waiver" is at the heart of Plaintiff's Motion for a New Trial.  In short, in March 2006, it is undisputed that Plaintiff executed a document with the heading "Waiver and Assumption of Risk Agreement."  That document was the subject of several rounds of briefing, motions in limine, and hearings before this Court.

Vigorous discussion and argument took place regarding the Waiver and Assumption of Risk Agreement, as to what could and could not be part of the document ultimately shown to the jury and discussed at trial.[2]  This Court issued several rulings regarding the Waiver and Assumption of Risk Agreement including: 1) the manner in which parties would refer to the Waiver and Assumption of Risk Agreement –it would be called "the document"; and 2) if said document was shown to the jury, certain portions of the document must be redacted.

A.    Alleged Misconduct

Plaintiff alleges that over the course of the eighteen-day trial, and in disregard of this Court's directives, "Cornell's counsel repeatedly engaged in a pattern of misconduct to have the jury consider the inadmissible and highly prejudicial issue of waiver." (Pl.'s Mot. for New Trial 1).  Plaintiff argues that Defendant fashioned a multi-day "strategy" to get this critical issue before the

---

[2]  This Court interpreted N.Y. GEN. OBLIG. § 5-326, which states that  agreements exempting gymnasiums from liability for negligence are void and unenforceable as against public policy, as applicable to Defendant Cornell University's gymnasium–the situs of Plaintiff's accident.  Based on the applicability of Section 5-326, this Court determined that the signed waiver portion of the Waiver and Assumption of Risk Agreement was void as against public policy.  However, given that assumption of the risk remained a viable issue, this Court ruled that portion of the document admissible.  The Waiver and Assumption of Risk Agreement was ordered redacted accordingly.

jury.  According to Plaintiff, this "strategy" of misconduct included:

1) Defense counsel's "repeated[] refer[ence] to the waiver as a 'participation agreement' in opening statements" (Pl.'s Mot. for New Trial 8);

2) Defense counsel's subsequent reference to the Waiver and Assumption of Risk Agreement as a "participation agreement," even after the Court's directive after opening statements that all counsel refer to the  Waiver and Assumption of Risk Agreement as "the document"(Pl.'s Mot. for New Trial 9);

3) After this Court directed the parties to remove certain language from the  Waiver and Assumption of Risk Agreement before it was submitted to the jury, defense counsel "proposed a document that included ellipses" as an attempt to indicate there was "more" to the document (Pl.'s Mot. for New Trial 10); and

4) Following this Court's directive that the parties create an altered version of the  Waiver and Assumption of Risk Agreement to present to the jury, counsel for the defense, Richard B. Wickersham, Jr.,  engaged in a colloquy in the jury's presence in which he stated, *inter alia,*"I didn't know if it was appropriate for you to give an instruction to the jury that this is not the actual document, but was something that you asked counsel to piece together." (Pl.'s Mot. for New Trial 13-14).

According to Plaintiff, these complained-of occurrences, taken together, made it "'reasonably probable' that the verdict was influenced by prejudicial statements."  Plaintiff further argues that "misconduct in this case clearly rose to the level such that it is reasonably probable that the verdict was influenced" and as such, a new trial should be granted.  (Pl.'s Mot. for New Trial 7).

**2) Legal Standard**

A court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).  Generally, a court will order a new trial: (1) when the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) when improper conduct by an attorney or the court unfairly influenced the verdict; (3) when the jury verdict was facially inconsistent; or (4) where a verdict is so grossly excessive or inadequate "as to shock the conscience." *Suarez v. Mattingly*, 212 F. Supp. 2d 350, 352 (D.N.J. 2002) (citations omitted).  Determining whether to grant a new trial is within the sound discretion of the trial court.  *Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1017 (3d Cir.1995).  "Such an endeavor is not, however, lightly undertaken, because it necessarily 'effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of the facts.'" *Guynup v. Lancaster Co.*, 2009 U.S. Dist. LEXIS 19424 at *1(E.D. Pa. Mar. 3, 2009) (quoting *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 90 (3d Cir.1960)). "Courts have granted new trials when there have been prejudicial errors of law or when the verdict is against the weight of the evidence." *Jones v. City of Phila.*, 2008 U.S. Dist. LEXIS 31991 at *1 (E.D. Pa. Apr. 18, 2008).

The Court's inquiry in evaluating a motion for a new trial on the basis of trial error is twofold: the Court must first determine whether an error was made in the course of the trial; then the Court must determine "whether that error was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice." *Gunyup*, 2009 U.S. Dist. LEXIS 19424 at *1 (*quoting Farra v. Stanley–Bostitch, Inc.*, 838 F. Supp. 1021, 1026 (E.D. Pa.1993)); *see Gebhardt v. Wilson Freight Forwarding Co.*, 348 F.2d 129, 133 (3d Cir.1965) ("If the evidence in the record, viewed from the

4

standpoint of the successful party, is sufficient to support the jury verdict, a new trial is not warranted

merely because the jury could have reached a different result."). With respect to the determination

of prejudice under the second prong, "a new trial must be granted unless it is highly probable that

[the erroneous ruling] did not affect the [objecting party's] substantial rights." *Reynolds v. Univ. of*

*Pa.*, 747 F. Supp. 2d 522, 534 (E.D. Pa. 2010) (citations omitted).

**3) Discussion**

   A new trial is not warranted.

   Though this Court, as it did on record during trial, admonishes some of the conduct of

defense counsel,[3] it is nevertheless clear that a new trial is not warranted.  **This Court disapproved**

**of – and still disproves of – defense counsel's conduct** relative to the inquiry made to the Court

in front of the jury: "this is not the actual document, but was something that you asked counsel to

piece together."[4]  Yet, due to the jury's finding that defendant Cornell University was not negligent,

any error in this case was harmless.  Furthermore, this Court cannot hold that defense counsel's

conduct made it "'reasonably probable' that the verdict was influenced by prejudicial statements."

*See Forrest v. Beloit Corp.*, 424 F.3d 344, 351 (3d Cir. 2005) (determining that although counsel

"crossed the line," the complained-of conduct "was not so severe as to warrant a new trial"); *see also*

*Price v. Tans Union, L.L.C.*, 839 F. Supp. 2d 785, 803-04 (E.D. Pa. 2012) ("[C]onjecture about the

possibility that the jury took Defense Counsel's objections to heart either by finding no liability or

---

   [3]  This Court notes that the vitriol, at times, was between some of plaintiff's counsel and some of defendant Cornell's counsel.  The Court does not wish to unfairly label all participating counsel as demonstrating incivility.

   [4]  There is no excuse for counsel, where a court orders redaction of a document, to stand before the jury and inform them that it was not the actual document, rather one that the judge told counsel to "piece together."

having reduced damages cannot support granting a new trial.").

Under the two-step inquiry required by Rule 59, to grant a new trial, this Court must first determine that misconduct occurred, and then further that it was "reasonably probable" that the "verdict was influenced by the resulting prejudice." *Marion v. TDI, Inc.*, 591 F.3d 137, 148 n.14 (3d Cir. 2012 )(quoting *Forrest v. Beloit Corp.*, 424 F.3d 344, 351 (3d Cir. 2005)).

As to the first criterion, Plaintiff argues that defense counsel "repeatedly" engaged in a "pattern of misconduct" over the course of the eighteen-day trial, so that defense counsel could "have the jury consider the inadmissible and highly prejudicial issue of waiver." (Pl.'s Mot. for New Trial 1). The limited occasions over the course of the eighteen-day trial in which defense counsel's complained-of conduct occurred cannot be considered a "pattern of misconduct" as Plaintiff argues. Though these comments could not be categorized as "benign", as defense counsel suggests, they were not so egregious or pervasive as to be considered a pattern of misconduct. The Court is unpersuaded that Plaintiff has met its burden of proof that there was harmful error. *See Corrigan v. Methodist Hosp.*, 234 F. Supp. 2d 494, 503 (E.D. Pa. 2002) (citations omitted) ("the burden of proving harmful error rests on the party moving for a new trial").

The waiver issue was the subject of several motions in limine, and the record in this case speaks for itself regarding the outcome of such motions. This Court afforded counsel for both sides ample opportunity to seek clarification on any of this Court's rulings in order to ensure compliance with such rulings. It was in seeking this clarification that much of the complained-of conduct occurred.

Plaintiff identifies four instances relating to the Waiver and Assumption of Risk Agreement that were allegedly part of defense counsel's "four day trial strategy" to bring the issue of waiver

6

before the jury, with the first three instances building up to the fourth– "a colloquy in front of the jury by Cornell's counsel" regarding a newly-created document, prepared at the Court's direction, which included language extracted from the Waiver and Assumption of Risk Agreement. (Pl.'s Mot. for New Trial 1).

Immediately following defense counsel's colloquy, this Court dismissed the jury from the room to further discuss the matter. Though this Court had permitted the parties to seek clarification on its rulings, this Court agrees that the "colloquy" made by defense counsel regarding the altered Waiver and Assumption of Risk form exhibit should have been made at sidebar (as was frequently the practice throughout the trial). Clearly, the Court expressed its disapproval that defense counsel decided to raise this issue in front of the jury when this court dismissed the jury and immediately called counsel to sidebar to discuss the issue.

Plaintiff devotes lengthy discussion in the Motion for a New Trial to the Court's admonishment of defense counsel at said sidebar, in an effort to equate the Court's reaction to an inference that the jury was harmed by defense counsel's alleged misconduct.[5]

That colloquy in and of itself, however, and taken in concert with the other three instances

---

[5] This Court's commentary at sidebar warrants a contextual explanation. This Court is well-aware of defense counsel's reputation as an accomplished trial attorney, by reason of defense counsel having appeared in several matters before me in state court over the course of many years. Based on those experiences, this Court had a certain expectation of conduct –expectations that defense counsel failed to meet on this occasion. The primary reason this Court said it was "hurt" by counsel's actions, was not because this Court believed the jury was prejudiced; rather, because of this Court's years of experience with counsel, this Court could not fathom that counsel would patently disobey the Motion in Limine order and the Court's directives as he did. Perhaps this Court should have used the term "disappointed," rather than hurt, because such conduct was surprising, insulting, and otherwise unexpected.

of complained-of conduct did not amount to error.  Nor did counsel's conduct affect the indisputable result of the jury verdict: the unanimous conclusion that the defendant was not negligent.  Having answered in the negative to the first interrogatory, that rendered moot the other issues in this case, including that of waiver.

Plaintiff's perceived issues of disobedience of the Motion in Limine ruling and this Court's directives did not go to the issue of whether or not Defendant was negligent.  This alleged misconduct did not affect Plaintiff's substantial rights because it did not touch upon the aggrieved issues.  Plaintiff speculates that the jury, in its unequivocal finding of "no negligence" on the part of Cornell, somehow considered the concept of "waiver".  Such speculation is unsupported by the record and Plaintiff simply does not meet its burden of proof that would require a new trial. *See Price*, 839 F. Supp. 2d at 803-04.  Under a Rule 59 analysis, even assuming *in arguendo* that the complained-of conduct was harmful error, Plaintiff fails to satisfy the second criterion that it was "reasonably probable" that the jury's ultimate determination that Defendant was not negligent was "influenced by the resulting prejudice." *Marion,* 591 F.3d at 148 n.14.

In fact, the only instance that this Court can fathom that the actions of either counsel affected the jury in any tangible way, was when, during the lunch break on one of the trial days, the courtroom deputy alerted this Court that the jury could overhear counsel for both sides engaged in a shouting match in the courtroom.  That alone should speak volumes about the need for civility in the courtroom.

An appropriate Order follows.